# EXHIBIT 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 18-00236 AG (JCGx) | Date | January 7, 2019 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings:** **[IN CHAMBERS] ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 26)**

The proposed settlement in this matter resolves the claims pending in four related stockholder derivative actions brought on behalf of Puma Biotechnology. The Court GRANTS Plaintiff's unopposed motion for final approval of this derivative settlement. (Dkt. 26.)

## 1. BACKGROUND

Puma is a biopharmaceutical company that developed and marketed a breast cancer treatment drug called NERLYNX ("neratinib"). Plaintiffs' derivative claims are based on Puma's allegedly false and misleading statements about neratinib's safety and efficacy. Plaintiff Rommerswael, a Puma stockholder, alleges that in July 2014 Puma executives became aware of poor results from the ExteNET clinical trial. (Compl. Dkt. 1 at ¶ 5.) Among other things, nearly 40% of trial participants experienced grade 3 or 4 diarrhea, and the disease-free survival (DFS) rate was only 2.3% higher for the neratinib group than for the placebo group. (*Id.*) But in a press release after the trial results, Puma CEO Alan Auerbach reported a 33% improvement in the DFS rate and low patient drop-out rates. (*Id.* at ¶¶ 6-7.) Plaintiff alleges these statements were contrary to the facts on hand.

After investigating the alleged wrongdoing and sending a litigation demand letter to the Puma Board, which the Board rejected, Plaintiff filed this lawsuit in February 2018. He alleges that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 18-00236 AG (JCGx) | Date | January 7, 2019 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

Puma's Board of Directors issued misleading Proxy Statements and thus incurred major financial and legal risks for Puma. He brought stockholder derivative claims against Puma's CEO, Senior VP, and five other directors for violation of the Securities Exchange Act (15 U.S.C. § 78 *et seq.*), breach of fiduciary duty, and waste of corporate assets. Three other stockholders filed similar derivative actions in state and federal court. The proposed settlement resolves all of these actions. Another related case was filed in this Court by Puma investors and is set for trial on January 15, 2019. *See Hsu v. Puma Biotechnology, Inc.*, No. 8:15cv00865-AG-SHK.

The parties have reached a global settlement on the four derivative lawsuits. This Court granted Plaintiff's unopposed motion for preliminary approval of the settlement on November 5, 2018. (Dkt. 23.) Plaintiff has now filed a motion for final settlement approval (Dkt. 27), and Defendants have filed a statement of non-opposition (Dkt. 29.) As of the date of Plaintiff's filing, no objections had been received. (Rifkin Decl. ¶ 18.)

## 2. PROPOSED SETTLEMENT

### 2.1 Negotiations

Considering recent, positive developments and momentum at Puma, plaintiffs Arnaud van der Gracht de Rommerswael, Paul Duran, Xing Xie, and Kevin McKenney (from four different cases) believe an early resolution of the derivative claims to be in Puma's best interests. *See* Stipulation (Dkt. 17-1, "Stip.") at 5. Plaintiffs issued settlement demands in February and April this year and negotiated with Defendants for several months to accomplish a global settlement. (Motion for Final Settlement Approval (Dkt. 26, "Mot.") at 10.) With the aid of a private mediator, Gregory P. Lindstrom, the parties reached a settlement ("Settlement") to resolve the four related derivative actions. (Mot. at 11.)

After agreeing on the substantive elements, the parties separately negotiated and came to agreement on Plaintiffs' counsel's fees and expenses. (Stip. § I.D.) They then prepared a joint stipulation setting forth the terms of settlement. Puma, acting through its independent, non-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-00236 AG (JCGx) | Date | January 7, 2019 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

defendant directors, reviewed the allegations and settlement terms and concluded the Settlement was in the company's best interests. (*Id.* ¶ 2.1.)

### 2.2 Terms

The Settlement requires the following corporate governance reforms, among others:

- Appointment of one new Independent Director to the Board;
- Stockholder input for the new Independent Director and future director nominees;
- Requirement that two-thirds of the directors must satisfy heightened independence standards;
- Creation of Board-level Research and Development Committee to oversee product pipeline efforts and R&D efforts (including those regarding clinical trials) and to review and pre-approve material public disclosures;
- Formal continuing education programs for directors;
- Director stock ownership requirements;
- Annual assessments of Puma's financial reporting and disclosures by management and the Audit Committee;
- Requirement that the Audit Committee annually review disclosures and inform the Board of any material suspected errors in the books and report to the Board if Puma appears to have insufficient liquidity. (Stip., Ex. A.)

### 2.3 Releases

All four related stockholder derivative actions are to be dismissed with prejudice. (*Id.* at 9.) The Plaintiffs (individually and on Puma's behalf), Plaintiffs' counsel, and Puma release all derivative claims connected to the defense, settlement, or resolution of the federal and state actions against the Defendants, Puma, and certain Related Persons. (*Id.* at 17, 18.) The stipulation purports to release claims by "Applicable Puma Shareholders," meaning any persons who owned Puma common stock on the date of the stipulation and continue to hold it at the settlement hearing, with some exclusions. (*Id.* at 9.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SACV 18-00236 AG (JCGx) | Date | January 7, 2019 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

**2.4 Attorney's Fees and Service Awards**

The Settlement provides that the Individual Defendants must cause their insurers to pay Plaintiffs' counsel $1,175,000 for attorney's fees and expenses within 10 days of entry of judgment. (Stip. § 4.1.) Plaintiffs explain that this amount was negotiated after the material terms of the Settlement were agreed upon and with the mediator's assistance. (Mot., 8.) Plaintiffs also request that the Court approve $1,500 service awards for each named plaintiff, to be paid only upon Court approval. (Stip. § 4.2.) These awards are to be deducted from the attorney's fees amount. (Mot. 30.)

## 3. LEGAL STANDARD

Courts may only approve a settlement agreement that is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Review of a proposed settlement generally involves two separate hearings. Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004). First the court makes a preliminary fairness evaluation. *Id.* It then holds a final approval hearing, where it "takes a closer look at the proposed settlement, taking into consideration objections and any other further developments in order to make a final fairness determination." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1062 (C.D. Cal. 2010).

To determine whether a settlement agreement is fair, reasonable, and adequate, courts must consider various factors, including (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). "This is by no means an exhaustive list of relevant considerations." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id.* "It is the settlement taken as a whole,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 18-00236 AG (JCGx) | Date | January 7, 2019 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026. And "[s]trong judicial policy favors settlements." *Churchill Vill., LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (omission and quotation marks omitted) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

## 4. ANALYSIS

Considering the benefit to Puma stockholders, arms-length negotiations before a qualified mediator, cost and risk of continued litigation in four separate derivative actions, and other factors from *Staton*, the Court grants final approval of the proposed Settlement.

### 4.1 Benefits to Puma

The Settlement requires the Board of Directors to undertake reforms that confer significant benefits on Puma stockholders, though not pecuniary in nature. *See* above, Section 2. Courts recognize that "a corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970). *See also Lewis v. Anderson*, 692 F.2d 1267, 1271 (9th Cir. 1982) ("While less tangible than recovery of money damages," corporate governance reforms that remedy alleged wrongdoing are "sufficiently beneficial to a corporation" to warrant settlement approval and fee award.")

Here, the reforms provide for more oversight over the Company's public disclosures, which are the key issue in these related lawsuits, and they provide for a more independent Board and tighter internal controls. For example, the appointment of a new Independent Director will help diffuse control of the Board by insiders with separate interests from those of Puma stockholders. (Mot., 14-15) Also, the new requirement that Puma nonemployee directors own at least 10,000 shares of common stock will better align the directors' and stockholders'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-00236 AG (JCGx) | Date | January 7, 2019 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

interests. (*Id.*, 15) And the creation of an R & D Committee will ensure oversight of Puma's clinical trials and development risks and is designed to avoid exactly the sort of problems that led to the current litigation. (*Id.*, 16.) The mediator who guided the parties through settlement negotiations submitted a declaration affirming the fairness of the final agreement, stating that it represents "an excellent result for Puma and its shareholders . . . [that is] carefully tailored to address the alleged wrongdoing . . . ." (Lindstrom Decl. ¶ 9.)

### 4.2 Informed, Arms-Length Negotiations

The Settlement was the product of arms-length negotiations between experienced and well-informed counsel. A "strong presumption of fairness" thus attaches to the Settlement. *See In re American Apparel, Inc. Shareholder Litig.*, No. CV 10-06352 MMM (JCGx) 2014 WL 10212865, at *8 (C.D. Cal. Jul. 28, 2014). Plaintiffs did extensive document review, exchanged initial settlement demands with Defendants, and participated in months of telephonic and written negotiations and mediation. (Rifkin Decl. ¶ 45.) Plaintiffs thus had enough information to properly evaluate the claims and defenses and pursue settlement. (*Id.* ¶ 43.) The independent, non-defendant directors of Puma also reviewed the Settlement and found it to be in the company's best interests. All of this weighs in favor of approval.

### 4.3 Fee Award

Regarding Plaintiffs' counsels' fee award of $1,175,000, Plaintiffs explain that filing these lawsuits required extensive investigation, research, and review, including: reviewing Puma's press releases, public statements, SEC filings, and securities analysts' reports; researching applicable law regarding claims and defenses; reviewing Puma's documents produced in a related action; preparing and responding to correspondence and settlement demands; and drafting comprehensive corporate governance reforms. (Rifkin Decl. at ¶¶ 54, 58, 60.) And they point to other cases where counsel received a similar award for achieving corporate governance reform. *See* Mot., 25-26. *See also In re Google Inc. S'holder Derivative Litig.*, No. CV-11-0448-PJH, 2015 WL 2877899, at *5 (awarding $9.2 million fee based on benefit of corporate governance reforms).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 18-00236 AG (JCGx) | Date | January 7, 2019 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

A lodestar cross-check also supports the fairness of the fee and expense amount. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, (9th Cir. 2002). Plaintiffs' counsel spent over 1,260 hours on these four actions and provided a lodestar amount of $666,357.25. (Rifkin Decl. ¶ 54.) After adding unreimbursed litigation costs, they calculate the lodestar multiplier to be 1.76. (*Id.* ¶ 56.) Given the contingent nature of the representation and substantial benefits conferred on Puma, this multiplier is within the reasonable range. *See, e.g., In Re Hewlett Packard Co. Securities Litig.*, No. CV-11-01494-AG, Reporter's Transcript of Motion Hearing (C.D. Cal. Dec. 10, 2014). Finally, after extensive questioning and discussion at the fairness hearing, Plaintiffs' counsel provided strong support for their fee calculation. Plaintiffs' counsel backed up their request with reference to case law, the particular difficulties of this case, and a description of the unique benefits achieved on Puma's behalf, among other things.

### 4.4 Risk and Cost of Litigation

Courts agree that derivative actions are particularly complex and "rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Derivative action plaintiffs must satisfy strict pleading requirements to show that a presuit demand was wrongfully refused by the board, or that making such a demand would have been futile. (Rifkin Decl. ¶ 35.) Derivative actions also entail extensive discovery and costly expert reports. (*Id.* ¶ 36.) So the risk and cost to Plaintiffs of continuing to litigate on multiple fronts is substantial. Early settlement is thus the best way to achieve the corporate reforms sought without incurring inordinate fees and making bilateral agreement increasingly unlikely.

### 4.5 Notice and Objections

The Court approved the content of class notice and dissemination methods at the preliminary approval stage. Counsel have since complied with the Court's directions regarding notice. *See* Declaration of Ryan E. Blair Re: Filing and Publishing Notice (Dkt. 25). As of the date of Plaintiffs' motion for final approval, no objections had been received. (Rifkin Decl. ¶ 18.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | SACV 18-00236 AG (JCGx) | Date | January 7, 2019 |
|---|---|---|---|
| Title | ARNAUD VAN DER GRACHT DE ROMMERSWAEL, DERIVATIVELY ON BEHALF OF PUMA BIOTECHNOLOGY, INC. v. ALAN AUERBACH ET AL. | | |

**5. DISPOSITION**

The Court finds the Settlement to be fair, reasonable, and adequate to those whom it is intended to benefit. *See Officers for Justice*, 688 F.2d at 625. The Court GRANTS Plaintiff's unopposed motion for final approval of the derivative settlement. (Dkt. 26.) The Court APPROVES the $1,175,000 attorney's fees and expenses amount and the $1,500 service awards for each named plaintiff (to be deducted from the fee award).

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |